AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Maryland

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Brown Goldstein Levy LLP, 120 E Baltimore Street, Suite 1700, Baltimore, Maryland 21202 | ) ) ) |

Case No. 19-2155

## SEARCH AND SEIZURE WARRANT

**To:** Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ **Maryland**
*(identify the person or describe the property to be searched and give its location)*:

See attachment A-1

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See attachment B-1

**YOU ARE COMMANDED** to execute this warrant on or before ___6/27/19___ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___The Hon. Theresa C. Buchanan___
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued: ___6/13/19 10:45 an___

_/s/_
Theresa Carroll Buchanan
United States Magistrate Judge
*Judge's signature*

City and state: ___Balt., MD (signed in Alex., VA)___     Theresa C. Buchanan, U.S. Magistrate Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
|---|

| Inventory of the property taken and name of any person(s) seized: |
|---|

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

SW06-0002
LO-19-0449

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Maryland

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Brown Goldstein Levy LLP, 120 E Baltimore Street, Suite 1700, Baltimore, Maryland 21202 | ) ) ) |

Case No. 19-2155

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Maryland _____
*(identify the person or describe the property to be searched and give its location):*

See attachment A-1

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*

See attachment B-1

**YOU ARE COMMANDED** to execute this warrant on or before ____6/27/19____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ____The Hon. Theresa C. Buchanan____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued:   6/13/19  10:45 am

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
*Judge's signature*

City and state:   Balt., MD (signed in Alex., VA)

Theresa C. Buchanan, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Maryland

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Brown Goldstein Levy LLP,<br>120 E Baltimore Street, Suite 1700, Baltimore, Maryland<br>21202 | )<br>)<br>)<br>)<br>) | Case No. 19-2155 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See attachment A-1

located in the _____ District of _____ Maryland _____, there is now concealed *(identify the person or describe the property to be seized)*:
See attachment B-1

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to Commit Offenses Against the United States |
| 18 U.S.C. § 1519 | Falsification of Record In Relation to Federal Investigation |
| 18 U.S.C. § 1512(c) | Obstruction of Official Proceeding |

The application is based on these facts:
See affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Scott Riha, Special Agent, IRS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/13/19

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
*Judge's signature*

City and state: Balt., MD (signed in Alex., VA)

Theresa C. Buchanan, U.S. Magistrate Judge
*Printed name and title*

Case 1:19-mj-02155-TCB   Document 1-2   Filed 06/13/19   Page 6 of 45
Case 1:19-mj-02155-TCB *SEALED*   Document 2-1 *SEALED*   Filed 06/13/19   Page 1 of 1
AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Maryland

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Brown Goldstein Levy LLP,<br>120 E Baltimore Street, Suite 1700, Baltimore, Maryland<br>21202 | )<br>)<br>)<br>)<br>)<br>)   Case No. 19-2155 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See attachment A-1

located in the _____ District of _____ Maryland _____, there is now concealed *(identify the person or describe the property to be seized)*:
See attachment B-1

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to Commit Offenses Against the United States |
| 18 U.S.C. § 1519 | Falsification of Record in Relation to Federal Investigation |
| 18 U.S.C. § 1512(c) | Obstruction of Official Proceeding |

The application is based on these facts:
See affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Scott Riha, Special Agent, IRS
*Printed name and title*

Sworn to before me and signed in my presence.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
*Judge's signature*

Date: 6/13/19

City and state: Balt., MD (signed in Alex., VA)

Theresa C. Buchanan, U.S. Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

IN THE MATTER OF THE
APPLICATION OF THE UNITED
STATES OF AMERICA FOR SEARCH
WARRANTS FOR

**FILED UNDER SEAL**

BROWN GOLDSTEIN LEVY LLP,
120 BALTIMORE STREET, SUITE 1700,
BALTIMORE, MARYLAND 21202; and

Misc. No. *19-2155 and 19-2156*

RAVENELL LAW,
711 ST. PAUL STREET,
BALTIMORE, MARYLAND 21202

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

Your Affiant, Special Agent Scott Riha, being first duly sworn, deposes and states as
follows:

## I.   INTRODUCTION

1.      Your Affiant is employed as a Special Agent with the United States Department
of the Treasury, Internal Revenue Service Criminal Investigation ("IRS-CI") and has been a
Special Agent with the IRS for approximately twelve years. Since December 2011, your Affiant
has worked with the Baltimore High Intensity Drug Trafficking Area ("HIDTA") Task Force.
Responsibilities as an IRS-CI Special Agent include the investigation of possible criminal
violations of the Internal Revenue laws under Title 26; the money laundering statutes under Title
18; the Bank Secrecy Act under Title 31; and other related offenses.

2.      Your Affiant graduated from the Criminal Investigator Training Program
("CITP") located at the Federal Law Enforcement Training Center ("FLETC") in October 2007
and from Special Agent Basic Training ("SABT") at the National Criminal Investigation
Training Academy ("NCITA") in February 2008. Both training programs are located in Glynco,

1

GA.  My law enforcement training has included instruction on financial and criminal

investigative techniques, as well as tax and criminal law which encompasses the identification

and development of probable cause to support the execution of search and seizure warrants.

Since graduating from FLETC, your Affiant has received various training in narcotics, money

laundering and obstruction investigations.

3.       Your Affiant has participated in numerous narcotics, money laundering, and

obstruction investigations, which included conducting physical and electronic surveillance,

interviewing individuals who have been involved in illegal narcotics trafficking, money

laundering activities, and obstructive conduct, executing search and seizure warrants, and

reviewing financial records.  As a result of this experience, your Affiant has been exposed to the

various techniques and methods used to disguise and conceal proceeds derived from illegal

activity, and to obstruct, influence, impede, and thwart law enforcement investigations and

Grand Jury investigations.

4.       Your affiant has participated in numerous searches and arrest warrants involving a

variety of offenses.  Your affiant is familiar with the facts and circumstances of this

investigation.  Your affiant has participated in searches of law offices and has been involved in

cases involving filter protocols and attorney-client privilege reviews.  Your affiant has personally

participated in the investigation of the offenses referred to below, reviewed reports and had

discussions with other Special Agents and employees of the IRS, the United States Drug

Enforcement Administration ("DEA") and other law enforcement agencies in connection with

the investigation.

5.       Because this affidavit is submitted for the limited purpose of establishing

probable cause for authorization to obtain information from the locations specified below, your

Affiant has not included every detail of every aspect of the investigation.  Rather, your Affiant

2

has set forth only those facts that your Affiant believes are necessary to establish probable cause

for the designated locations. Your Affiant has not excluded any information known to me that

would defeat a determination of probable cause. The information contained in this affidavit is

based upon your Affiant's personal knowledge, review of documents and other evidence, and

conversations with other law enforcement officers and other individuals.

   6.  Based on your Affiant's training and experience and the facts set forth in this

affidavit, there is probable cause to believe that the locations listed below (hereinafter,

"TARGET LOCATIONS") contain evidence, fruits, and instrumentalities of violations of 18

U.S.C. § 371 (Conspiracy to Commit Offenses Against the United States), 18 U.S.C. § 1519

(Falsification of Record In Relation to Federal Investigation), and 18 U.S.C. § 1512(c)

(Obstruction of Official Proceeding). Among other items, there is probable cause to believe that

the TARGET LOCATIONS contain evidence of the following: that (1) Joshua Treem and

Kenneth Ravenell agreed to and did submit a letter containing false information to a United

States District Judge on February 8, 2018, for the purpose of influencing, impeding, and

obstructing the ongoing investigation and prosecution of Kenneth Ravenell, or in relation to or

contemplation of the investigation and prosecution of Kenneth Ravenell; (2) Joshua Treem and

Kenneth Ravenell obtained a 600-page *Jencks* production from ██R.B.██ counsel and used

that production to prepare a false list of exculpatory statements in a document titled "KWR's

Combined Notes"; (3) Joshua Treem presented the "KWR's Combined Notes" document to

██R.B.██ for him to sign and acknowledge that he had read it, but ██R.B.██ contradicted

the accuracy of the exculpatory statements in that document in a subsequent conversation with

Joshua Treem; and (4) Joshua Treem and/or Kenneth Ravenell are in possession of a Power of

Attorney from ██R.B.██ which gave Kenneth Ravenell the authority to control monies and

assets derived from the illegal sale of narcotics.

3

7.    The TARGET LOCATIONS are:

**Brown Goldstein Levy LLP, 120 East Baltimore Street, Suite 1700, Baltimore, Maryland 21202 (Target Location 1)**, the law firm of Kenneth Ravenell's criminal attorney, Joshua Treem.

**Ravenell Law, 711 St. Paul Street, Baltimore, Maryland 21202 (Target Location 2)**, the law firm of Kenneth Ravenell.

The TARGET LOCATIONS are more fully described in Attachments A-1 and A-2 of this affidavit. The items to be seized pursuant to these warrants are set forth in Attachments B-1 and B-2 of this affidavit.

## II.    PROBABLE CAUSE

### A. Background of the Investigation

8.  .    Kenneth Ravenell, Esq. previously represented various members of the ▇▇ R.B. ▇▇ ▇▇ Drug Trafficking Organization ("DTO"), including ▇▇▇ R.B. ▇▇▇ in criminal cases in Maryland and Arizona. The DTO was responsible for the procurement, transportation, distribution, and sale of large amounts of marijuana and cocaine obtained from California, Arizona, and Texas, and distributed in North Carolina, Pennsylvania, Ohio, Maryland and elsewhere. ▇▇ J.C. ▇▇, ▇▇ J.B. ▇▇, ▇▇ H.B. ▇▇, ▇▇ K.R. ▇▇, ▇▇ J.B. ▇▇, and multiple other drug dealers associated with the DTO were charged and convicted of drug and money laundering-related offenses in the District of Maryland. During the course of an investigation of the DTO by the IRS and DEA, multiple witnesses provided information to the United States regarding Ravenell, which showed that Ravenell became a participant in the illegal activities of the DTO, conspired to launder proceeds derived from drug trafficking, in violation of 18 U.S.C. § 1956(h), conspired to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846, and conspired to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(c), among other criminal violations.

4

9.     On April 17, 2014, ███ R.B. ███ was charged with conspiracy to distribute five kilograms or more of cocaine and one thousand kilograms or more of marijuana, in violation of 21 U.S.C. § 846. *See United States v.* ███████ R.B. ████████████████ ███████. Ravenell entered his appearance in the case as retained counsel for ███ R.B. ██.

10.     A series of Grand Jury subpoenas were issued to entities, including LOC Marketing LLC, on March 6, 2014. According to multiple witnesses who participated in the conduct of the DTO, LOC Marketing LLC was used as a vehicle to launder drug proceeds and funnel the proceeds to and from Ravenell at his law firm, and Ravenell knew that LOC Marketing LLC was utilized for this purpose. According to witnesses, Ravenell recruited a lawyer to represent LOC Marketing LLC in connection with the subpoena response, and Ravenell involved himself in the process of reviewing which records were produced to the United States in response to that subpoena. Your Affiant believes that Ravenell was aware of the Grand Jury Investigation of ██ R.B and his co-conspirators, to include Ravenell, at the latest in March 2014.

11.     On August 26, 2014, the Honorable Timothy J. Sullivan, United States Magistrate Judge, District of Maryland, authorized a Search and Seizure Warrant for the law firm of

███████████████████████████████████████████████

██ ██████████████████. At the time of the search warrant, Ravenell was a partner at the MFM firm. Documents and files were seized from the MFM law firm and were subsequently reviewed through a filter protocol. Thereafter, Joshua Treem, Esq. began representing Kenneth Ravenell in connection with the ongoing investigation by the IRS, the DEA, and the Grand Jury proceedings.

12.     According to the Court's electronic case filing docket sheet, on October 10, 2014, the United States District Court terminated Ravenell as counsel of record for ███ R.B. ████.

SW06-0011
LO-19-0449

Thereafter, several lawyers represented ▇R.B▇. Michael Lawlor eventually entered his appearance on behalf of ▇R.B▇ as court-appointed counsel on September 15, 2016. Trial was scheduled for November 7, 2016.

### B. Treem and Ravenell obtain *Jencks* Documents from Lawlor

13.     On September 7, 2016, Lawlor executed a written discovery agreement, in which the United States agreed to provide *Jencks* material in the ▇R.B▇ case at least one week prior to the first day of trial. The discovery agreement provided that "[a]ll discovery is provided on the condition that counsel will not give copies of this material to the client or to anyone outside counsel's office, absent prior approval of this office." Lawlor consented to these terms and signed the agreement and returned it to the United States.

14.     On October 26, 2016, the United States provided Lawlor with the *Jencks* production, which included 600 pages consisting of witness interviews, grand jury testimony, and other statements by witnesses. The production contained partial redactions of information from witnesses that related to Ravenell, who was under investigation by the IRS and DEA. ▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇ Your Affiant has reviewed the redacted *Jencks* production and believes that if Ravenell were to review the *Jencks* production, he could determine (1) which witnesses were providing information to the United States about him, and (2) the substance of much of the information that witnesses provided to the United States about him.

15.     Less than one week before ▇R.B.▇ scheduled trial, on November 2, 2016, ▇R.B.▇ entered a plea of guilty to Conspiracy to Distribute and Possess with Intent to Distribute Cocaine and Marijuana, in violation of 21 U.S.C. § 846, and Conspiracy to Launder Money, in violation of 18 U.S.C. § 1956(h)▇▇▇▇▇▇▇▇▇

6



R.B. was later sentenced to 26 years' imprisonment.

16.

17.

SW06-0013
LO-19-0449

███████████████████████████████████████████████

## C. Treem Meets ██ R.B. ██ in Towers Jail in Arizona

18. ████████████████████████████████████████

████████████

19.    Law enforcement conducted a toll analysis involving a phone used by Ravenell's female companion, who previously testified in the Grand Jury on January 9, 2019 that she has been involved in a romantic relationship with Ravenell since 2006. Based on this toll analysis, your Affiant believes that Ravenell changed his phone number to 443-900-3274 ("Ravenell's phone"). According to subscriber records, Treem's phone is 410-456-2359 ("Treem's phone"). According to toll records, Treem's phone was in contact with Ravenell's phone on September 2, 2017 and September 3, 2017. Your Affiant believes that Treem and Ravenell may have also been in contact by email during the month of September 2017.

20.    On or about September 9, 2017, Treem and a private investigator, Sean Gordon, traveled to Phoenix, Arizona, and met with ██R.B██ in the Towers Jail. ████████recording devices were utilized by law enforcement to record this meeting with Treem and Gordon as well as the meeting that occurred the following day. During this meeting, Treem told ██R.B██ that Ravenell "was bugging [Treem]" to meet with ██R.B██. Treem explained, "Alright, so not surprising to you, Ken's given us a list of things we've got to ask you." ████████████████████ ████████████ Treem was recorded on video presenting ██R.B██ with a document titled "KWR's Combined Notes," which he placed in front of ██R.B██ and asked ██R.B██ to read and review. Kenneth Ravenell's initials are "KWR." Treem's hand can be seen in the below photograph holding a pen pointing at a portion of the document in front of ██R.B██. When watching the

8

recorded video in real time, the words "KWR's Combined Notes" can be clearly seen in bold and underlined font at the top/center of the page. A still image of Treem's hand and the document titled "KWR's Combined Notes" is displayed below.



21.    After Treem presented R.B with this document, R.B told Treem, "I know what Kenny wants, that's no problem. He know who I am, he know what – we've known each other for two decades. Alright, so I know this formula, that's not a problem, alright. You will leave here with the information that you came seeking." Treem responded, "Okay." R.B explained, "whatever Kenny needs that's fine, that's not a problem. Like we can go through this whole questioning and then we're going to do the song and dance, that's not a problem, alright period." Treem responded, "Alright."

9

22.    **R.B.** continued, "Lawlor even went to the point to tell me—to ask me, yo—can I give him the *Jencks* or whatever that shit is the, the evidence, yeah. I say yes, give it to him, okay. Up to this day I haven't read that. And I make sure that was turned over so Kenny can be fully aware and apprised of what's going on." **R.B.** later asked, "Is there any way you can make me lay eyes on those *Jencks* . . .?" Treem responded, "Well, the short answer is no – I don't want to carry it around with me. Let me think about it . . ." **R.B.** later said, "I know that [Lawlor's] your boy and he did a big move . . . by making sure certain information get to you all . . ." Treem responded, "I don't disagree with that."

23.    **R.B.** discussed his arrangement with Ravenell to invest **R.B.**'s drug proceeds in a casino. **R.B.** asked, "None of this is going to be turned over to the government, right?" Treem responded, "I don't mean to laugh, but yeah, none of this is going to be turned over. This is between you, me, and Sean you know, that's where it's going to stay." **R.B.** explained, "But for Kenny to send you here he absolutely has to have unequivocal trust in you." Treem responded, "Well, I think he does and I trust him." Treem said, "I'm going to be talking to Ken later, so I'm going to talk to him about this."

24.    ██████████████████████████████████████

██████████████████████████████████████████
██████████████████████████████████████████

████████████████████ Treem said, "I'm just going to read what he wrote." Your Affiant believes that Treem's reference to "he wrote" is a reference to Ravenell having authored the document, "KWR's Combined Notes," after reviewing information contained in the *Jencks* material that was known to the United States and not to be disclosed to anyone other than **R.B.**'s counsel. Based on witness interviews and the investigation to date, your Affiant further believes that the document "KWR's Combined Notes"

10

contained a list of false exculpatory statements and was designed by Ravenell to elicit false statements from ▓R.B.▓ to be used as a record of a witness statement at a later date to falsely exculpate Ravenell. ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████ During the meeting with Treem, ▓R.B.▓ asked, "You want me to just read it man, and answer every question?" Treem said, "Yeah, you can do that. Absolutely, that's probably easier." ▓R.B.▓ held the document and read a series of statements listed on "KWR's Combined Notes," and after reading the paragraphs, ▓R.B.▓ can be heard on the recording making statements, the majority of which agreed with the false statements created by Kenneth Ravenell. For example, ▓R.B.▓ stated the following while reading from "KWR's Combined Notes":

> At all times I was an ethical lawyer in my representation. Yes.
>
> I was not part of a drug trafficking organization. No.
>
> I did not serve as house counsel. No.
>
> He told me he was no longer in drug activities. Correct.
>
> He worked hard to keep me unaware of his drug and money laundering activities because he knew I would not approve. Correct.
>
> He never told me he was using LOC to launder money. Correct.
>
> . . .
>
> He told me that LOC was totally legitimate. Yes.
>
> He worked hard to deceive me and others, including Ed Leyden, Milun Chun into believing LOC was totally legitimate. Yes.
>
> He worked hard to deceive me and others because he did not believe I and other attorneys would continue to represent him if he told any of them the truth about LOC. True.
>
> . . .
>
> He and ▓J.C.▓ have not given me millions of dollars in cash. Nope.

11

SW06-0017
LO-19-0449

...

He and ▓J.C.▓ never talked openly in front of me about collecting drug money? No.

...

25.     Throughout the meeting, ▓R.B▓ asked whether Ravenell would get him back his money that ▓R.B▓ had provided to invest in a casino in Maryland. Treem responded, "Well, we'll see what we can do about that." ▓R.B▓ said, "I mean, I'm telling you all point blank period, I'm not beating around the bush. I need my fucking money, I need money." Treem responded, "I hear you." ▓R.B▓ explained, "you need to let him know, man, listen man, ▓R.B▓ there holding down do what he do, but ▓R.B▓ needs his motherfucking money. I need my money as promised, I need my money for the casino deal, I need my money period." Sean Gordon responded, "I got it."

26.     Treem then discussed with ▓R.B▓ some ways that ▓R.B▓ could get his money back. When ▓R.B▓ asked Treem how he could get his money back if Ravenell's former partner at the MFM law firm (Partner 1) now had control of the money, Treem said, "So you know, throwing him [Partner 1] in the briar patch—I can deal with that. That's [Partner 1's] money [now] you know, [but] I know people at the press, you know. I know the television people to call, I know the people I can go talk to, you know, I can spin it my way, I'm not worried about any of that." ▓R.B▓ asked, "So [Partner 1] has just fucked me?" Treem said, "you're just another fuckee. A fuckee in a long line of fuckees, you know, [Partner 1] doesn't care." ▓R.B▓ said, "I need money, bottom line. I need my money." Treem responded, "I got you."

27.     In the video, ▓R.B▓ said that ▓R.B▓ had executed a Power of Attorney so that Ravenell could control ▓R.B▓'s money, and Treem said, "I mean, Ken is holding that power of attorney for you, you don't want him to have it anymore. I mean that's not good for you, that's not good for him. So I'm going to talk to him. I'm going to talk to him about that and find out,

12

SW06-0018
LO-19-0449

you know, if there's a document out there I'd like to see it. He needs to get off of that." Your Affiant believes that "get off that" is a reference to either destroying the document or executing or creating a new document that would remove Ravenell from the Power of Attorney. Your Affiant further believes that such a document, or evidence of the destruction of the Power of Attorney, would also be stored at Target Location 1 and Target Location 2.

.28.    Treem said, "the only people I want to know—whom I want to know that I'm here today is you, Sean [Gordon], me and Ken." R.B. responded, "Okay." Treem reiterated, "That's the only people I want to know." R.B. stated, "I'm just sitting back looking at my story that as much as Ken needs me I need Ken to also man up on my shit, you know what I'm saying. Like I'm here, you feel what I'm saying."

29.    Treem concluded the meeting by asking R.B. if Treem and Gordon could come back and visit him the following day, and R.B. agreed. Your Affiant has reviewed the video and there is nothing that Treem or Gordon said in response to R.B.'s requests regarding his money that causes your Affiant to conclude that Treem or Gordon believed that R.B. was attempting to extort or blackmail Ravenell. Indeed, Treem asked to come back the following day and your Affiant believes that Treem would not have done so if he felt that R.B. was attempting to extort or blackmail Ravenell.[1]

30.    On September 10, 2017, Treem and Gordon returned to the jail to meet with R.B. a second time. At the outset, Treem informed R.B. that Treem was going to meet with Ravenell the next day at 4:00 PM. R.B. asked if he could meet with Gordon alone, and Treem agreed and left the room.

---

[1] Should this Court request, the videotape and transcript of these meetings will be made available for its review.

13

31.   R.B. asked Gordon, "I can talk freely in front [of Treem] all the way?" Gordon responded, "Yeah. Yeah. You know, this is all privileged info." R.B. responded, "All right, cool. All right, he can come back in." Treem reentered the room.

32.   Treem said, "Okay. So we went over all this stuff yesterday, I'm not going to bother with that today. Can you sign this for me, just to show Ken that you went over it?" R.B. said "No problem." On September 10, 2017, R.B. did not acknowledge the accuracy of the individual statements on the document, and R.B. did not say the statements were accurate. R.B. said, "There's a couple of things that I want to go through. I want to make sure that everything I discuss with you is kept [confidential]." Treem responded, "It is." The following conversation between R.B. and Treem occurred:

R.B.:   Alright, so here's what I'm saying to you. And I want to go deep into this, okay, because I want you to clearly understand my position, alright? My only position here is my money, that's it. Ken can get anything he want from me that's not a problem. It's been that way since I've been incarcerated. I made sure Lawlor—made sure Lawlor took care of the *Jencks* situation, all of that shit, you know that I'm saying to you. So that's not a problem. My concern is my money.

        *Now the information I gave you yesterday—*

Treem:  Right.

R.B.:   *—is the information if called to testify I will testify to on the stand.*[2]

Treem:  I understand.

R.B.:   Okay?

Treem:  Um-hum (yes).

R.B.:   *Here's the real situation, alright. The real situation is this: Ken knew my whole business operation, period, from A to Z, from nuts [to bolts]. Ken knew that LOC was used to launder money. Ken knew I was still involved in drugs. I paid Ken millions of dollars in cash.*[3] *Ken shared all that money between [Partner 1 and Partner 2], now [Partner 1 and*

---

[2] Emphasis added.
[3] Emphasis added.

14

SW06-0020
LO-19-0449

Partner 2] is riding off in the sunset and he got a headache and nobody is making sure I get my money.

[Partner 1 and Partner 2] is aware of this whole situation. Ken don't make no move without them knowing as I've been told by him that they're partners and they need to know everything that's involved.

Treem:    You mean partners now?

**R.B.**:    Were. I'm talking about back when I was in their firm. *I used to deliver book bags of cash to that office.* **J.C.** *delivered millions of dollars to Ken.*[4] So what I'm saying is that I'm going to be the good soldier like I'm supposed to be, but I need Ken to put his nuts on the line for me and make sure I get my fucking money. Like I've told you, I got two kids in college. I got one that's coming home that doesn't want to go to college. I'm not asking for no handout. I'm just asking for my money.

        . . .

**R.B.**:    I don't know why [Partner 1] and them are so comfortable fucking me. Did they see the *Jencks* too?

Treem:    Who, [Partner 1]?

**R.B.**:    [Partner 1] and them, that's why they're so comfortable?

Treem:    No they haven't seen anything.

**R.B.**    So they just want to take—

Treem:    They have no right to see anything.

**R.B.**    So they just want to run off in the sunset with our fucking money.

Treem:    Well, you're banking on—assuming that—I have no reason to doubt you, **R.B.** , but you know if they know what—given what you say they know, you know, they're going to let Ken take the fall for them. Because what you're telling me, so make sure I understand this, you're telling me that Ken knew that you were using LOC to launder your drug money and that [Partner 1 and Partner 2] knew it too.

**R.B.**:    Absolutely.

Treem:    And that, you know, cash—balances of cash were delivered to them at the firm.

**R.B.**    Absolutely.

---

[4] Emphasis added.

15

| | |
|---|---|
| Treem: | And there was really no question about, you know, where this was all coming from -- |
| R.B: | Absolutely. |
| Treem: | -- at least commingled. |
| R.B. | Right. |
| Treem: | *And so I'm giving you credit for that being accurate and truthful.*[5] If that's so, I mean [Partner 1 and Partner 2] aren't on the receiving end of anything yet so they're very happy to let Ken take the fall. |
| R.B: | Motherfuckers. |
| Treem: | Because for them to be in trouble Ken's got to be in trouble. And so he's the one who is on -- whose neck is out there. And to the extent that [Partner 1 and Partner 2] have some exposure right now they're very happy to have Ken be the target because either way they win. If Ken is charged and is convicted, you know, then the question is at that point, you know, how long does all that take and maybe the statute of limitations has run on everything. And if—you know if—otherwise, you know, you're the only out maybe at that point is Ken makes some deal which sends him (indiscernible) they are and [Partner 1 and Partner 2] have all the defenses that they need, look at this he's trying to roll over to save his ass. So— but, you know, *if what you're telling me is—which today is somewhat different than what you said yesterday.*[6] |
| R.B: | I mean, this—I'm ready—this is for the [witness] stand, okay. |
| Treem: | Well, okay. But, you know, I can't, I can't—I don't know where this is all going. |
| R.B. | Right. |
| Treem: | And I don't know whether, you know, assuming Ken is charged, I have no idea sitting here today what I'm going to need or who I'm going to need to defend to put on the witness stand to defend Ken. |
| R.B. | Right. |
| Treem: | All right. I can't put you on the witness stand if you're going to lie, and if I know you're going to lie I can't do that, because that get me in a lot of trouble if that comes out. |

---

[5] Emphasis added.
[6] Emphasis added.

SW06-0022
LO-19-0449

33.    Treem later said, "I need to go kind of sit in my office and close the door and play all this out. Because I got to think about this." Treem said, "I wrote down what you said." Treem explained, "But how, what your value to me is in terms of my representation of Ken I got to think about that. And I don't want to do anything that's going to screw up what you want to do in terms of trying to get the money that's owed to you back in your pocket for the benefit of your kids." Treem said he was not going to tell R.B.'s lawyer "anything" about what was said during their two days of meetings "because that doesn't help my client."

34.    R.B. asked Treem, "Can I have a conversation with Sean [Gordon] real quick?" Treem said, "Yeah, of course you can have a conversation with Sean [Gordon]. Can you do me a favor?" R.B. responded, "Yes, sir." Treem asked, "Can you sign that for me that you saw it?" Treem then left the room. R.B. said to Gordon, "I thought this dude was Ken's lawyer, man." Gordon responded, "He is. He is Ken's lawyer." R.B. told Gordon, "I should never have had that conversation with [Treem]." Gordon said, "He wasn't going to put you on the stand anyway." R.B. later said, "I'm like, yo, I'm willing to testify for all of this" and asked, "so he just want me to sign saying I seen it?" Gordon responded, "Yeah, you saw it." R.B. said, "Can my lawyer get a copy of this?" Gordon responded, "Yeah, I think so. I'll talk to Josh." R.B. said, "All right." R.B. subsequently signed the document, "KWR's Combined Notes."

35.    Treem reentered the room and R.B. said, "Any help you can give me I would really appreciate it." Treem said, "Yeah, I hear you." Treem later said, "Maybe there may be a way I can kind of finesse this." Before leaving with Gordon, Treem told R.B., "We'll be back in touch ... you take care of yourself."

36.    According to toll records, Treem's phone was in voice contact with Ravenell's phone on September 13, 2017, September 15, 2017, September 26, 2017, October 7, 2017, November 3, 2017, November 6, 2017, November 7, 2017, November 10, 2017, December 5,

SW06-0023
LO-19-0449

2017, December 13, 2017, December 15, 2017, January 4, 2017, January 6, 2017, January 11, 2017, January 23, 2017, January 24, 2017, February 1, 2018, February 2, 2018, and February 6, 2018. Your Affiant believes it is also likely that Treem and Ravenell communicated by email during this same time frame.

37.     According to flight records provided by American Airlines, Treem and Gordon flew from Baltimore Washington International Airport ("BWI") to Sky Harbor International Airport ("Phoenix") on the morning of September 9, 2017, and flew from Phoenix to BWI in the evening hours on September 10, 2017. BWI is the closest major airport located near Target Location 1 and Target Location 2.

### D. Treem Sends Letter with False Representations to U.S. District Judge

38.     Treem wrote and sent an *ex parte* letter dated February 8, 2018, to a United States District Judge in the District of Maryland who had presided over ▮▮R.B.▮▮ case and the cases of other members of the DTO. Treem did not provide a copy of the letter to the United States Attorney's Office for the District of Maryland ("USAO"); however, the District Judge who received the letter subsequently provided the letter to the USAO. The District Judge was the presiding Judge over ▮▮R.B.▮▮ federal case as well as the related cases involving ▮▮R.B.▮▮ co-conspirators. In sealed Orders dated October 31, 2017, the District Judges and Magistrate Judges in the District Court for Maryland were recused and a U.S. District Judge and U.S. Magistrate Judge in the Eastern District of Virginia were appointed to preside over matters related to Kenneth Ravenell. These orders were sealed and your Affiant believes that Joshua Treem and Kenneth Ravenell did not know that the District Judge from the District of Maryland was recused when the letter was sent to the District Judge on or about February 8, 2018. Your Affiant believes that Joshua Treem and Kenneth Ravenell believed that the District Judge from the District of Maryland would preside over any case against Kenneth Ravenell

18

SW06-0024
LO-19-0449

because the case would be related to the ▮▮ R.B ▮▮ matters and therefore assigned to the District

Judge. In the letter, which has been attached to this Affidavit as "Attachment A," Treem stated,

"For approximately the past 18 months I have been representing Kenneth W. Ravenell, who has

been under investigation by the United States Attorney's Office ("USAO") for at least the past

three and a half years for allegedly violating federal money laundering statutes. I am writing in

that capacity and as an officer to this Court..."

     39.   The letter stated, in part:

> We arranged to meet with ▮▮ R.B. ▮▮ on September 9-10, 2017. In the course of our meeting
> on September 9[th] ▮▮ R.B. ▮▮ orally confirmed numerous facts that were exculpatory as to
> Mr. Ravenell in the USAO's ongoing investigation. We presented him with a document
> we had prepared with a number of statements, and asked ▮▮ R.B. ▮▮ to review and to
> acknowledge the accuracy or inaccuracy of each. He indicated he wanted to consider the
> request overnight.

> The following day when we returned to continue our visit, ▮▮ R.B. ▮▮ **stated that the**
> **statements were accurate. He acknowledged the accuracy of the individual**
> **statements and signed the document.**[7] Throughout our conversation ▮▮ R.B. ▮▮ reiterated
> that he had no intention of cooperating with the government by providing information or
> testimony that would falsely inculpate Mr. Ravenell.

     40.   In the letter, Treem said he believed that ▮▮ R.B. ▮▮ statements about wanting the

return of his money constituted criminal conduct. Treem said that two follow up voicemails

from ▮▮R.B▮ to Sean Gordon and text messages to Gordon from a friend of ▮▮'s "clearly

threatened that ▮▮ R.B. ▮▮ will 'go to the government' if money is not paid by Mr. Ravenell." The

letter stated, "[as] officers of this Court, Mr. Ravenell and I believe we are obligated to report

conduct that we believe constitutes extortion and blackmail."

     41.   The letter further stated, "Mr. Ravenell believes a record needs to be made of

these events regardless of the consequences, should he be charged and should ▮▮ R.B. ▮▮ appear

as a government witness. As his counsel I concur."

---

[7] Emphasis added.

SW06-0025
LO-19-0449

42.    A review of toll records show that Treem's phone was in voice contact with Ravenell's phone on February 9, 2018, February 13, 2018, February 16, 2018, February 18, 2018, and February 21, 2018. Treem's phone was also in voice contact and text message contact with Ravenell's phone periodically from March 2018 through January 2019. Your Affiant believes that Treem and Ravenell also exchanged emails during this time frame following the submission of the letter.

43.    Your Affiant believes that Treem and Ravenell agreed that Treem would write the U.S. District Judge and include false statements regarding ██ R.B. ██ discussion of the accuracy of the statements in "KWR's Combined Notes." The letter states that "Mr. Ravenell and I believe we are obligated to report conduct that we believe constitutes extortion and blackmail," and "Mr. Ravenell believes that a record needs to be made of these events regardless of the consequences, should he be charged and should ██ R.B. ██ appear as a government witness. As his counsel I concur." These statements show that Ravenell was involved with the submission of the letter and Treem did not do it unilaterally or without Ravenell's knowledge. Furthermore, during the course of the recorded interview at the Towers Jail, Treem made multiple statements indicating that "KWR's Combined Notes" was drafted by Ravenell (i.e., "Ken's given us a list of things we've got to ask you"). ████████████████████████████

████████████████████████ as well other information obtained in the IRS and DEA investigation, your Affiant knows that statements that are in "KWR's Combined Notes" are false. Based on the video recording of the meeting on September 10, 2017, referenced in the paragraphs above, your Affiant knows that Treem's letter misrepresented to the U.S. District Judge that ██ R.B. ██ had signed the "KWR's Combined Notes" document to "acknowledge[] the accuracy of the individual statements," omitting the material fact that ██ R.B. ██ instead said, "[t]he real situation is this: Ken knew my whole business operation, period, from A to Z, from nuts [to bolts]. Ken

SW06-0026
LO-19-0449

knew that LOC was used to launder money. Ken knew I was still involved in drugs. I paid Ken millions of dollars in cash." Your Affiant further knows that Treem made these false representations and material omissions while citing his and Ravenell's obligations "as officers of this Court."

44.     Your Affiant further knows based on the interviews that Ravenell's practice was to elicit false exculpatory statements from witnesses "to take them off the board," or words to the effect of preparing to blunt their effectiveness and credibility as potential witnesses. Your Affiant believes Ravenell and Treem submitted the false letter to the court in an attempt to create a false "record," and to create a false impression of events. Your Affiant is not aware of any information suggesting that Treem and Ravenell submitted the letter to the Chief Judge of the U.S. District Court for the District of Maryland or to any law enforcement authority who could investigate a claim of extortion or blackmail. Instead, they submitted the letter to the District Judge who was presently presiding over the R.B.-related matters and who they believed would preside over any case against Ravenell. Accordingly, your Affiant believes that Treem and Ravenell agreed to submit a false letter (which also omitted R.B.'s statements) with the intent to impede, obstruct, or influence the investigation and prosecution of Ravenell by the IRS and DEA, and to obstruct, influence, and impede the Grand Jury Investigation and prosecution of Ravenell.

**E. Treem Continues to Represent Kenneth Ravenell**

45.     The United States Attorney's Office sent a letter to Joshua Treem dated January 11, 2019, advising Treem that the Government believed there were multiple nonwaivable conflicts of interest that would prevent Treem from continuing to represent Kenneth Ravenell in connection with the ongoing Grand Jury investigation. The letter to Treem also indicated that, as

SW06-0027
LO-19-0449

of January 11, 2019, Treem was a subject of the investigation and Treem's conduct was within the scope of the grand jury's investigation.

46.    According to Michael Lawlor, during the month of March 2019, Joshua Treem contacted him on multiple occasions, on behalf of Kenneth Ravenell, asking for information regarding R.B. . Lawlor sent an e-mail to Treem on April 2, 2019, stating "I received your messages about R.B. I can't really help with the information you requested as it would be a breach of attorney/client communication." Treem responded in an e-mail to Lawlor, "Not sure I understand your concern. R.B. waived the privilege and the info I am looking for was given by him to you to give to me. In other words it was for publication. That said I can't make you do what you don't want to do."

47.    Based on this email as well as other information your Affiant has received, your Affiant believes that Joshua Treem has not recused himself from the representation of Kenneth Ravenell and continues to represent him in connection with the ongoing criminal investigation.



22

SW06-0028
LO-19-0449

### F. Search Locations

48.      There is probable cause to believe that evidence of the foregoing criminal

violations is located at the law offices of Brown Goldstein Levy LLP, 120 East Baltimore Street,

Suite 1700, Baltimore, Maryland 21202 (Target Location 1), which is the law firm of Kenneth

Ravenell's criminal attorney, Joshua Treem. The website for Brown Goldstein Levy lists a

biography for Joshua Treem and an address of Target Location 1. The letter that Joshua Treem

sent on February 8, 2018, to a United States District Judge also lists Target Location 1 as the

address for Joshua Treem. On June 5, 2019, an agent from the IRS went to Target Location 1

and confirmed that Suite 1700 is the location for the law offices of Brown Goldstein Levy LLP

and is on the 17th Floor.

49.      There is probable cause to believe that evidence of the foregoing criminal

violations is located at the law offices of Ravenell Law, 711 St. Paul Street, Baltimore, Maryland

21202 (Target Location 2), the law firm of Kenneth Ravenell, who is the client of criminal

attorney, Joshua Treem. The website for Kenneth Ravenell lists an address of Target Location 2.

The Maryland Judiciary Attorney Listing also lists Target Location 2 as Ravenell's business

address. On or about June 7, 2019, an agent from the IRS went to Target Location 2 and

reviewed the directory on the wall and confirmed that Kenneth Ravenell's law office was in the

building at Target Location 2.

50.      Your Affiant knows that lawyers maintain records and documents related to legal

matters in their offices and law firms. Treem drafted the February 8, 2018 letter on his law

firm's letterhead and your Affiant believes he used his law firm's resources, including his

computer, e-mail systems, and resources to create and send the letter. A header on the letter

indicates that Joshua Treem sent the letter "via electronic mail" from his e-mail address,

jtreem@browngold.com. Furthermore, in the letter, Joshua Treem wrote in his "capacity" and as

SW06-0029
LO-19-0449

an "officer of this Court." Based on my training, knowledge and experience, I believe that evidence of this letter is likely to be found in Treem's law office. Your Affiant also believes that Treem sent drafts of this letter to his client, Kenneth Ravenell because his letter indicated that "Mr. Ravenell believes that a record needs to be made of these events regardless of the consequences, should he be charged and should R.B. appear as a witness." Based on my training, knowledge, and experience, your Affiant believes that Treem and Ravenell likely discussed the false representations in the letter over e-mail correspondence and drafted multiple versions of the letter. Your Affiant believes that Ravenell and Treem stored a copy of this letter, and its prior drafts and versions, in their files in their respective law firms and electronically on their computers and emails.

51.     During this meeting with R.B. on September 9, 2017, Treem said that "Ken's given us a list of things we've got to ask you" and, the following day, R.B. signed the document "KWR's Combined Notes." Based on my training, knowledge, and experience, when lawyers obtain witness statements in connection with their representative matters they are likely to keep those documents in their law offices with their other work-related matters and files for the client. Because Treem said the document was prepared by Ravenell, it is likely that Ravenell would have received a copy of the signed version of "KWR's Combined Notes" and would have copies of the original drafts of the document in his law firm files and electronic storage. Your Affiant believes Treem gave Ravenell a copy of the signed letter because Treem said to R.B. that he wanted R.B. to sign it so Treem could "show Ken that you went over it." Your Affiant believes that unsigned and signed copies of this document, as well as prior versions of the document, have been retained by Treem and Ravenell and will be stored in both Target Location 1 and Target Location 2.

SW06-0030
LO-19-0449

52. ███████████████████████████████████████████████████████████████

███████████████████████████████████ Your Affiant believes that after the *Jencks*

production was obtained, Ravenell reviewed copies or scans of the *Jencks* materials and created

his list, "KWR's Combined Notes." Given that the *Jencks* documents are legal documents

consisting of witness statements, and it consists of 600 pages containing incriminating statements

about Ravenell, your Affiant believes that Ravenell and Treem stored a copy of the *Jencks*

materials at their law firms in a secure area or electronically on their computers and electronic

storage, and have retained the *Jencks* material.

53.    In his meeting with **R.B.**, Treem indicated that he did not want Ravenell to have

the power of attorney for **R.B.** anymore.  Treem stated, "I'm going to talk to him about that and

find out, you know, if there's a document out there I'd like to see it.  He needs to get off of that."

Your Affiant believes that after the visit to the jail in Arizona, Treem may have obtained the

Power of Attorney from Ravenell to review it and get it out of Ravenell's possession or to create

and execute a new version that omitted reference to Ravenell.  Alternatively, your Affiant

believes that Ravenell provided a copy of the Power of Attorney to Treem and retained a copy

for his own records.  Given that the Power of Attorney is a legal document and relates to an

ongoing criminal investigation, your Affiant believes that the document may be located at both

Treem's and Ravenell's law firms.

54.    In his letter dated February 8, 2018, Treem stated that **R.B.** "sent letters to Mr.

Ravenell that represented that he had information related to the government's ongoing

investigation that exculpated Mr. Ravenell."  The letter says that Ravenell received the letters

and your Affiant believes that Treem reviewed the letters in preparation of his letter to the

District Judge on his firm's letterhead.  Your Affiant believes that any letters from **R.B.**, or

copies thereof, will likely be found at the law offices of Treem and Ravenell.

25

55.     During the meeting on September 9 and 10, 2017, Treem discussed with R.B. ways that he could attempt to obtain his money. R.B. explained that he wanted his money. Treem said he did not want to do anything that could "screw up" R.B.'s ability to recoup his money, and Treem said "there may be a way I can kind of finesse this." Your Affiant believes that Treem may have obtained evidence of R.B. casino investment, which consisted of unlawful drug proceeds, and may have communicated with Partner 1 and Partner 2 and Ravenell regarding getting R.B.'s drug money back to him in a manner that could conceal the money from the ongoing IRS/DEA investigation and Grand Jury proceedings.

56.     Based on your Affiant's training, knowledge, experience and the foregoing facts, there is probable cause to believe that evidence of the aforementioned criminal violations are located at Target Location 1 and Target Location 2.

## G.  Use and Retention of Electronic Data and Communications

57.     Based on your Affiant's training, knowledge and experience in investigating obstruction, your Affiant knows that individuals that commit such offenses often use electronic means to send information that may constitute evidence of the offenses. For example, emails and other electronic communications associated with individual involved in the creation and submission of false documents to influence an investigation, often include details about how and why they conspired to conduct their illegal activities, their intent to influence, obstruct or impede, their knowledge of the false statements written in the documents, and admissions regarding the unlawful purpose of the documents and intent to impede law enforcement investigations and official proceedings. For example, your Affiant believes that Treem and Ravenell likely discussed and contemplated in emails and text messages: (1) the letter to the District Judge dated February 8, 2018, (2) the *Jencks* production, "KWR's Combined Notes" and how to use those materials with R.B to obstruct the investigation, (3) what to do to "get off of" (i.e., get rid of) the Power of

26

SW06-0032
LO-19-0449

Attorney signed by **R.B.** and provided to Ravenell, (4) any letters received from **R.B.**, (5) what they believed about the U.S. District Judge to whom they sent the letter, and how they believed he would react or be influenced by the letter or how they intended the letter to be used to obstruct an official proceeding, (6) monies and investments referenced by **R.B.** in the Towers Jail visits and in Treem's letter to the U.S. District Judge, (7) preparations for the visit to **R.B.** in Towers Jail, and (8) Treem's receipt of a letter indicating he was a subject in an ongoing investigation and any actions he would take in light of that information to further obstruct the investigations. These electronic data and communications may contain evidence of the aforementioned violations because they will establish intent, motive, planning, preparation, beliefs, and other key facts that are probative of Treem and Ravenell's state of mind and the facts to prove the elements of the criminal offenses.

    58.    Based on your Affiant's knowledge and experience, as well as the knowledge and experience of other agents with whom your Affiant works, your Affiant submits that individuals who engage in the types of crimes under investigation here are likely to have electronic copies of relevant documents, e-mails, and other electronic data containing evidence of their crimes. Such electronic data is commonly stored on a variety of everyday devices, including desktop computers, laptop computers, tablets, Treem's phone, Ravenell's phone, thumb drives, portable hard drives, and other data storage items, which criminal offenders store and maintain in their residences and offices. Based upon the facts set forth in this affidavit and your Affiant's training and experience, there is probable cause to believe that electronic data related to the commission of 18 U.S.C. § 371 (Conspiracy to Commit Offenses Against the United States), 18 U.S.C. § 1519 (Falsification of Record In Relation to Federal Investigation) and 18 U.S.C. § 1512(c) (Obstruction of Official Proceeding) is stored and maintained on electronic devices located within the TARGET LOCATIONS.

SW06-0033
LO-19-0449

## III.    CONCLUSION

59.    The foregoing facts establish probable cause to believe that Ravenell and Treem conspired to commit an offense against the United States in that Ravenell and Treem knowingly falsified, covered up, concealed, and made a false entry in a record or document with the intent to impede, obstruct, or influence the investigation of a matter within the jurisdiction of the IRS and DEA and an official proceeding, or in relation to or contemplation of any such matter or case. There is probable cause to believe that Ravenell and Treem violated 18 U.S.C. § 371 (Conspiracy to Commit Offenses Against the United States), 18 U.S.C. § 1519 (Falsification of Record In Relation to Federal Investigation) and 18 U.S.C. § 1512(c) (Obstruction of Official Proceeding). Finally, there is probable cause to believe that the materials, records, documents, and electronic devices found at the TARGET LOCATIONS discussed in this affidavit will constitute evidence of the aforementioned criminal violations.

60.    If the information in this affidavit is immediately made known to Treem, Ravenell and others, such disclosure could jeopardize the success of the continuing investigation. Through my training and experience, your Affiant knows that if individuals learn that they are under investigation prior to being contacted by law enforcement, they may attempt to destroy or hide evidence and coordinate, in advance, statements or information that they may provide to law enforcement. Therefore, there is good cause to seal the information in this affidavit, as well as the accompanying search warrant and application, and it is respectfully requested that such materials be sealed until further order of the Court.

28

I have signed this document under oath and its contents are true and correct to the best of

my knowledge.

Scott Riha
Special Agent, IRS

Sworn to and subscribed before me this _13_ day of June 2019

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

The Hon. Theresa C. Buchanan
United States Magistrate Judge
District of Maryland
(by Designation)

29

SW06-0035
LO-19-0449

# ATTACHMENT A

SW06-0036
LO-19-0449

Joshua R. Treem
jtreem@browngold.com

February 8, 2018

VIA ELECTRONIC MAIL

United States District Court
For the District of Maryland
United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

**CONFIDENTIAL**
**FILED EX PARTE**

Re:

Dear         :

     For approximately the past 18 months I have been representing Kenneth W. Ravenell, who has been under investigation by the United States Attorney's Office ("USAO") for at least the past three and half years for allegedly violating federal money laundering statutes. I am writing in that capacity and as an officer of this Court, to bring to your attention recent actions by R.B. that I believe constitute criminal conduct. For reasons that will become obvious, I do not believe I can direct these concerns to the USAO, R.B. appellate counsel in Maryland or his trial counsel in Arizona, where he is currently detained pending disposition of state charges.

     Some background is in order. In 2015, while R.B. was detained pending disposition of the charges in the case in the United States District Court for the District of Maryland, he sent letters to Mr. Ravenell that represented that he had information related to the government's ongoing investigation that exculpated Mr. Ravenell. The letters also emphasized that he had no inculpatory information, and had no intention of cooperating with the government. Mr. Ravenell did not respond to the letters. Subsequently, shortly before R.B. sentencing in February 2017, his attorney orally advised me that his client wanted to meet with me to provide details of his exculpatory information regarding Mr. Ravenell.

     With that in mind, and after R.B. sentencing, I contacted his attorney who confirmed that R.B. still wanted to meet with me to provide the exculpatory information he claimed he had. By the time my schedule permitted me to visit with R.B. he had filed his appeal and had been writted to Phoenix, Arizona where the state drug charges filed in 2012 were still pending. I contacted R.B. appellate counsel and confirmed that R.B. wanted to meet with me and my investigator, Sean Gordon.

     We arranged to meet with R.B. on September 9-10, 2017. In the course of our meeting on September 9th R.B. orally confirmed numerous facts that were exculpatory as to Mr. Ravenell in USAO's ongoing investigation. We presented him with a document we had prepared with a number of statements, and asked R.B. to review and to acknowledge the accuracy or inaccuracy of each. He indicated he wanted to consider that request overnight.

120 E. Baltimore Street   Suite 1700   Baltimore, MD 21202   T 410.962.1030   F 410.385.0869   www.browngold.com

**BROWN GOLDSTEIN & LEVY, LLP**

February 8, 2018
Page 2

The following day when we returned to continue our visit, **R.B.** stated that the statements were accurate. He acknowledged the accuracy of the individual statements and signed the document. Throughout our conversation **R.B.** reiterated that he had no intention of cooperating with the government by providing information or testimony that would falsely inculpate Mr. Ravenell. He then began to complain about not having access to money that he claimed was owed to him that he wanted for his family. He asserted that some was being held by the Murphy Firm, and some was an interest in a business venture. He wanted Mr. Ravenell to get the money for him. At that point, concerned that these statements sounded extortionate, we reminded **R.B.** that we represented Mr. Ravenell and if he had any complaints about money he believed he was owed, he would need to raise those with his counsel not us. We ended the meeting and returned to Baltimore later that day. We took no action in response to **R.B.** claims or demands.

Until mid-January 2018, neither I, nor Mr. Gordon, had any further contact with **R.B.** However, on January 12, 2018, Mr. Gordon received two voicemail messages from **R.B.** The substance of the first message left on January 11, 2018, was that **R.B.** had not received any "love" from Mr. Ravenell and that he was thinking of going to "Warwick." A second voicemail message, also sent to Mr. Gordon, was to the same effect. On January 29, 2018, a third message by text was received by Mr. Gordon, this time from a friend of **R.B.** 's, who represented that she was texting on **R.B.** 's behalf. The messages clearly threatened that **R.B.** will "go to the government" if money is not paid by Mr. Ravenell. We have not responded to any of these messages and have no intention of doing that. However, as officers of this Court, Mr. Ravenell and I believe we are obligated to report conduct that we believe constitutes extortion and blackmail.

Under normal circumstances I would report this to law enforcement authorities and ■ **R.B.** attorney. However, these calls and messages coincide with the State case pending in Arizona in which **R.B.** if convicted, could face a term of incarceration consecutive to the federal sentence he is currently serving. I have no knowledge whether **R.B.** is currently or may become a government witness or whether the phone calls were recorded by authorities. My obligations to my client and his current status as a target of a federal investigation prevent me from reporting ■ **R.B.** recent actions to law enforcement authorities. However, Mr. Ravenell believes that a record needs to be made of these events regardless of the consequences, should he be charged and should **R.B.** appear as a government witness. As his counsel I concur. I regret having to direct this letter to Your Honor but under these unique and difficult circumstances Mr. Ravenell and I do not see an alternative forum to which this matter can be addressed.

Very truly yours,

Joshua R. Treem

## ATTACHMENT A-1
### Location to be searched

**Brown Goldstein Levy LLP,
120 East Baltimore Street, Suite 1700,
Baltimore, Maryland 21202
(Target Location 1)**

120 East Baltimore Street is a 25-story office building, also known as the SunTrust building, located on the corner of Baltimore and Calvert Streets in the city of Baltimore, Maryland. The main entrance, which is located on the street level, has "SUNTRUST BUILDING" in gold letters displayed just above two revolving doors. The numbers "120" are located on the building. As with many multiple-story office buildings, several businesses are located in various suites among the various floors. Target Location 1 is located on the 17th floor.

SW06-0039
LO-19-0449

**ATTACHMENT B-1**
**Particular Things to be Seized**
**Brown Goldstein Levy LLP,**
**120 East Baltimore Street, Suite 1700,**
**Baltimore, Maryland 21202**
**(Target Location 1)**

1. A document titled "KWR's Combined Notes," which was provided to ██R.B.██ , reviewed by ██R.B.██ , and signed by ██R.B.██ at the Towers Jail on or about September 9-10, 2017, including all hard copies, electronic copies, drafts, unsigned versions, and signed versions.

2. A letter dated February 8, 2018 from Joshua Treem to a United States District Judge regarding *United States v.* ██R.B.██ , including all hard copies and electronic versions, and prior drafts, unsigned versions, and signed versions.

3. The *Jencks* production provided by the United States to counsel for ██R.B.██ in *United States v.* ██R.B.██ , consisting of approximately 600 pages (originally bates numbered J-0001 through J-0600).

4. A Power of Attorney prepared for the benefit of ██R.B.██ , or relating to ██R.B.██ ██ in any way, including all hard copies, electronic copies, drafts, amended versions, unsigned versions, and signed versions.

5. Any and all letters and correspondence by and between ██R.B.██ (or any known aliases) and Kenneth Ravenell or Joshua Treem.

6. Any and all files and documents, including but not limited to communications and emails, involving Joshua Treem and/or Kenneth Ravenell regarding or relating in any way to:
   a. the document "KWR's Combined Notes;"
   b. Treem and Gordon's visit to ██R.B██ on or about September 9-10, 2017 at the Towers Jail;
   c. The letter dated February 8, 2018 from Joshua Treem to a United States District Judge regarding *United States v.* ██R.B.██ ;
   d. The United States District Judge who received the letter dated February 8, 2018, including but not limited to discussions regarding attempting to influence the Judge;
   e. Monies and investments by ██R.B.██ , including but not limited to the casino investment discussed on September 9-10, 2017, the money being held by the MFM law firm and interest in a business venture referenced by Joshua Treem in his letter dated February 8, 2018;
   f. The letter dated January 11, 2019 to Joshua Treem in which Joshua Treem was identified as a subject of the investigation;
   g. The *Jencks* production provided by the United States to counsel for ██R.B.██ in *United States v.* ██R.B.██ ;
   h. A Power of Attorney related to ██R.B.██

1

With respect to the search of any of the items described above which may be stored on electronic devices, such as cellular telephones, laptops, tablets, computers, hardware, or software, or are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment (including CDs, DVDs, thumb drives, flash drives, hard disk drives, or removable digital storage media, software or memory in any form), the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

a.    surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

b.    "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

c.    "scanning" storage areas to discover and possible recover recently deleted files;

d.    "scanning" storage areas for deliberately hidden files; or

e.    performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

f.    seizing the laptop(s), computer(s), and phone(s) used by Treem or Ravenell, or in their custody or control, and conducting the search procedures listed above in paragraphs (a) through (e).

If after performing these procedures, the directories, files or storage areas do not reveal evidence of the specified criminal activity, the further search of that particular directory, file or storage area, shall cease.

## FILTER TEAM PRACTICES AND PROCEDURES

I.    **Filter team membership:**

Members of the filter team are not part of the investigation/prosecution team and never will be so in the future.

- An AUSA (or AUSAs) from the United States Attorney's Office for the District of Maryland's Southern Division.

2

- A legal assistant and paralegal from the United States Attorney's Office for the District of Maryland's Southern Division.

- Federal agents from the IRS-CID and DEA, who are not members of the investigative team.

- A forensic examiner. The filter team forensic examiner will be permitted to testify to the creation of new images (as described below), if necessary. In addition, if the filter team forensic examiner locates Privilege Review Material (as defined below) that is ultimately provided to the investigation/prosecution team as outlined below, then the filter team forensic examiner will be permitted to testify regarding the location and/or recovery of that material, as well as the filter procedures.

**II.      Basic procedures for the search of any physical location:**

A. Only members of the filter team will conduct the search of any physical location. Members of the investigation/prosecution team may be present at the search location or communicate by phone with members of the filter team but only for such purposes as providing information about the investigation to the filter team to assist the filter team's determination of what to seize.

B. If the search warrant permits the seizure of electronic storage devices, the filter team forensic examiner may conduct on-site triage of any such devices encountered at the search location. After the on-site triage (if any) is completed, the original electronic storage devices will be placed in secure containers, stored in a secure evidence location, and clearly labeled as containing potentially privileged material. These secure containers must not be opened absent approval from the filter team AUSA.

**III.      Basic procedures related to the filter team review of seized material:**

A. The filter team AUSA shall be responsible for documenting actions and decisions of the filter team (e.g., in a log), including but not limited to: a chain of custody for items being searched; a chain of custody for relevant material reviewed pursuant to the procedures set forth below; categorization of relevant material as described below; determinations by the court, if any; and chain of custody of material and items returned to defense counsel, if any.

B. The filter team shall not disclose the contents of any potentially privileged material to any member of the investigation/prosecution team except as provided below.

C. As appropriate, the filter team may contact the attorneys' clients to obtain waivers of the attorney-client privilege. If a client waives the attorney-client privilege as to files, no further filter review of files (electronic or physical records) for attorney-client privileged material is required. However, the filter team will review such files for work product material.

3

SW06-0042
LO-19-0449

Also, the filter team may ask counsel for Treem or counsel for Ravenell whether a seized electronic storage device, file, document, or email account may contain attorney-client privileged or work product material. If counsel for Treem or counsel for Ravenell states in writing that an electronic storage device, email account, or file does not contain either attorney-client privileged or work product material, then no further review is required.

D. The filter team should err on the side of caution and treat any questionable items as potentially privileged.

E. Filter team members also should be familiar with the legal elements of the attorney-client privilege and the attorney work product doctrine.

F. Consultation with investigative agents and/or prosecutors: During the review process, the filter team AUSA may consult with the investigative agents and/or prosecutors concerning the facts of the investigation, the legal elements of the attorney-client privilege or work product doctrine, the scope of the warrants, the appropriateness of the seizure of any document, file, or item, or any other legal question. However, members of the filter team shall not disclose the substance of any potentially privileged item to any member of the investigation/prosecution team except in accordance with (IV)(C)(5) or (IV)(H) below.

G. Except as provided below for redacted material, the filter team AUSA shall place all material determined to be privileged in a secure container marked "privileged information," and return it to counsel for Treem or counsel for Ravenell. The filter team AUSA shall maintain an electronic or manual log detailing the nature of the documents returned and the process by which privileged materials were stored, protected, and returned to counsel for Treem or counsel for Ravenell.

H. Items to be reviewed: The filter team will review all seized material except that which could not contain attorney-client privileged or work product protected material (e.g., firearms, narcotics, folders or files containing only child pornography). As discussed above, the filter review may be limited or not necessary if counsel for Treem or counsel for Ravenell indicates in writing that certain physical records or electronic storage devices do not contain privileged or work product protected material.

IV.    **Filter team review procedures:**

**Electronic Storage Devices**

A. The filter team forensic examiner will work with the filter team AUSA to identify all privileged and potentially privileged material on the electronic storage devices. **"Privileged" information includes attorney-client information, attorney work product information, and client confidences that have not been waived.** The filter

4

SW06-0043
LO-19-0449

team AUSA may provide non-privileged material to the investigation/prosecution team on a rolling basis.

B.  After the filter team has located all privileged and potentially privileged files on the electronic storage devices, the filter team forensic examiner then will either (1) create new images of the electronic storage devices that do not contain any privileged or potentially privileged information, or (2) place the files that do not contain any privileged or potentially privileged information on a new digital media (e.g., a DVD) (collectively "New Media").  This process can be done on a rolling basis.  The filter team forensic examiner then will provide the New Media to *another* forensic examiner ("Case Forensic Examiner"), who will be a part of the investigation and prosecution team.  The Case Forensic Examiner will work with the investigation/prosecution team to locate material on the New Media that is responsive to the search warrant and will testify if the need arises.

C.  The filter team forensic examiner will continue to work with the filter team AUSA in the review of the privileged and potentially privileged material.

   1.  The filter team first will determine whether any of the privileged or potentially privileged material is responsive to the search warrant.

   2.  For that privileged and potentially privileged material that is not responsive to the search warrant, the filter team will not disclose that material to the investigation/prosecution team.

   3.  For that privileged and potentially privileged material that is responsive to the search warrant, the filter team AUSA will segregate it into three categories:  (1) privileged and cannot be redacted; (2) privileged but can be redacted; and (3) potentially privileged (e.g., government does not have sufficient information to make that determination or an exception to privilege may apply).  The filter team AUSA will send a copy of the material in categories 2 (with proposed redactions) and 3 (collectively "Privilege Review Material") to counsel for Treem, or counsel for Ravenell along with a log.[1]

   4.  The filter team AUSA will work with counsel for Treem or counsel for Ravenell to try to reach an agreement as to whether the Privilege Review Material:  (1) is not privileged; (2) falls within an exception to the privilege; or (3) can be redacted to eliminate the privileged information.  If the filter team AUSA and counsel for Treem and counsel for Ravenell cannot agree on items of the Privilege Review Material, the filter team AUSA will submit those items to the court for determination regarding privilege and/or proposed redactions of the privileged material.

---

[1] The log shall include the file name, the type of file, the file date, the creation date, the medium on which the file is located, the sender and recipient (if applicable), and the subject matter.

SW06-0044
LO-19-0449

5.  The filter team AUSA only will provide Privilege Review Material to the investigation/prosecution team if: (i) the filter team and counsel for Treem and counsel for Ravenell reach an agreement as to the item; or (ii) the court has ruled that the filter team AUSA may provide the item to the investigation/prosecution team.

D.  No member of the filter team shall disclose the contents of any potentially privileged material retrieved from the electronic storage devices to members of the investigation/prosecution team except in accordance with (IV)(C)(5) directly above.

### Physical Records and/or Items

E.  The filter team AUSA will review the material to identify privileged and potentially privileged material. **"Privileged" information includes attorney-client information, attorney work product information, and client confidences that have not been waived.** The filter team AUSA may provide non-privileged material to the investigation/prosecution team on a rolling basis.

F.  For that privileged and potentially privileged material that is responsive to the search warrant, the filter team AUSA will segregate it into three categories: (1) privileged and cannot be redacted; (2) privileged but can be redacted; and (3) potentially privileged (e.g., government does not have sufficient information to make that determination or an exception to privilege may apply). The filter AUSA will send a copy of the material in categories 2 (with proposed redactions) and 3 (collectively "Privilege Review Material") to counsel for Treem and counsel for Ravenell, along with a log.[2]

G.  The filter team AUSA will work with counsel for Treem or counsel for Ravenell to try to reach an agreement as to whether the Privilege Review Material: (1) is not privileged; (2) falls within an exception to the privilege; or (3) can be redacted to eliminate the privileged information. If the filter team AUSA and counsel for Treem or counsel for Ravenell cannot agree on items of the Privilege Review Material, the filter team AUSA will submit those items to the court for determination regarding privilege and/or proposed redactions of the privileged material.

H.  The filter team AUSA only will provide Privilege Review Material to the investigation/prosecution team if: (i) the filter team and counsel for Treem or counsel for Ravenell reach an agreement as to the item; or (ii) the court has ruled that the filter team AUSA may provide the item to the investigation/prosecution team.

I.  No member of the filter team shall disclose the contents of any potentially privileged physical records or items to members of the investigation/prosecution team except in accordance with (IV)(H) directly above.

---

[2] The log shall include the file name, the type of file, the file date, the creation date, the medium on which the file is located, the sender and recipient (if applicable), and the subject matter.

6

SW06-0045
LO-19-0449